UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ROBERT JONES,                                          :

                      Plaintiff,                    :            14 Civ. 1350 (AJP)

            -against-                        :            **OPINION & ORDER**

C.O. STEPHANIE NG AND C.O. DESIREE            :
MCKENNEY,
                                           :

                   Defendants.                     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

           Pro se plaintiff Robert Jones brings this action pursuant to 42 U.S.C. § 1983, the

Americans with Disabilities Act and the Rehabilitation Act, alleging that his constitutional and

statutory rights were violated when he was deprived of his orthopedic shoes during two separate

intake proceedings at the Manhattan Detention Complex.  (Dkt. No. 29: Am. Compl. ¶¶ 3-6.)[1]  At

a conference on October 30, 2014, Jones agreed to the dismissal without prejudice of all defendants

except corrections officers Stephanie Ng and Desiree McKenney.   (10/30/14 Minute Entry.)

Presently before the court is defendants' summary judgment motion.  (Dkt. No. 44: Ng & McKenney

Notice of Motion.)[2]  The parties have consented to decision of this action by a Magistrate Judge

pursuant to 28 U.S.C. § 636(c).  (Dkt. No. 33.)

---

[1]     References to "Am. Compl." are to Jones' Second Amended Complaint.

[2]     Despite repeated orders to submit his opposition papers by February 13, 2015 (see Dkt. No.
42: 1/13/15 Order; Dkt. No. 52: 2/5/15 Memo Endorsed Letter), Jones did not do so until
February 27, 2015 (see Dkt. No. 55).   The Court has nevertheless considered Jones'
opposition papers.  Jones has not objected to defendants' Rule 56.1 Statement, Dkt. No. 46.

For the reasons set forth below, defendants' summary judgment motion is <u>GRANTED</u>.

## FACTS

### Jones' Medical Conditions

Jones has various foot, leg, hip and back ailments.  (Dkt. No. 46: Ng & McKenney 56.1 Stmt. ¶ 5.)  Jones also has "mental health issues, and right knee orthopedic hardware, painful, difficulty bearing weight" and "painful bunion deformities."  (Dkt. No. 49: Giovanatti Aff. Ex. A: Jones Dep. at 29; Giovanatti Aff. Ex. C: Jones Med. Record at 000451.)[3/]  Jones has used crutches or a cane for mobility since 2000.  (Ng & McKenney 56.1 Stmt. ¶ 6.)  Jones wears orthopedic shoes that he says reduce the "impact that's experienced from just walking."  (Jones Dep. at 87.)

### Jones' 2012 Arrest

Jones was arrested on January 27, 2012 for burglary and was taken to the Manhattan Detention Complex ("MDC").  (Dkt. No. 46: Ng & McKenney 56.1 Stmt. ¶ 10.)  Upon arrival, Jones was processed by Officer Ng.  (Ng & McKenney 56.1 Stmt. ¶ 13.)  Officer Ng confiscated Jones' personal property, including his wallet, jacket and orthopedic shoes, but allowed him to keep his crutches.  (Ng & McKenney 56.1 Stmt. ¶¶ 14, 20; Dkt. No. 49: Giovanatti Aff. Ex. A: Jones Dep. at 29-30.)  Jones informed Officer Ng that he had a medical condition "that necessitates using [his] particular shoes."  (Jones Dep. at 22; Ng & McKenney 56.1 Stmt. ¶ 14.)  Officer Ng does not have access to inmate medical records while at the property desk  (Ng & McKenney 56.1 Stmt. ¶ 15; Dkt. No. 47: Ng Aff. ¶ 20), and she informed Jones that to retrieve his shoes he would need authorization from the medical staff (Ng & McKenney 56.1 Stmt. ¶ 16).  Officer Ng placed Jones' orthopedic shoes in a property bag with his other personal items and gave Jones a receipt.  (Ng & McKenney

---

[3/]   The medical records in Giovanatti Affidavit Exhibits B and C are referred to by the Bates number stamped on the lower right hand corner of each page.

56.1 Stmt. ¶ 17.)  Officer Ng gave Jones a pair of black, DOC-issued "sneaker-like" shoes to wear.
(Jones Dep. at 25; Ng & McKenney 56.1 Stmt. ¶ 17.)

After Officer Ng inventoried his property, Jones had a medical screening but the
medical staff did not authorize Jones to reclaim his shoes.  (Ng & McKenney 56.1 Stmt. ¶ 18.)
Jones was incarcerated at the MDC until sometime in February 2012, when he was transferred to
Rikers Island.  (Jones Dep. at 34.)  Jones was released from Rikers Island on April 23, 2013.  (Ng
& McKenney 56.1 Stmt. ¶ 11.)

**Jones' 2013 Arrest**

On May 15, 2013, Jones was arrested and brought to the MDC a second time. (Dkt.
No. 46: Ng & McKenney 56.1 Stmt. ¶ 24.)  In the receiving room upon intake, Officer McKenney
inventoried Jones' property and confiscated his personal items, including his shoes, but allowed him
to keep his cane. (Dkt. No. 49: Giovanatti Aff. Ex. A: Jones Dep. at 66, 69; Ng & McKenney 56.1
Stmt. ¶¶ 27, 34.)  Jones informed Officer McKenney that he had a "documented" medical condition
(Jones Dep. at 66), but Officer McKenney did not have access to inmate medical records while at
the property desk (Dkt. No. 48: McKenney Aff. ¶ 20; Ng & McKenney 56.1 Stmt. ¶ 29).  Officer
McKenney informed Jones that he could retrieve his shoes if he got medical staff authorization.
(Jones Dep. at 67; Ng & McKenney 56.1 Stmt. ¶ 30.)  Jones left his shoes with Officer McKenney,
and received a pair of DOC-issued shoes.  (Ng & McKenney 56.1 Stmt. ¶ 31.)  Jones had his intake
medical screening but did not return with authorization from the medical staff to reclaim his shoes.
(Ng & McKenney 56.1 Stmt. ¶ 32.)

**Jones' Medical Care While in DOC Custody**

Jones was seen by doctors numerous times throughout the two periods he was in
DOC custody: Between January 28, 2012 and April 23, 2013, Jones received treatment for his feet

and leg conditions on thirteen separate occasions, and additionally attended twenty-six sessions of physical therapy.  (Dkt. No. 46: Ng & McKenney 56.1 Stmt. ¶¶ 22-23.)  Between May 15, 2013 and December 2, 2014, Jones saw doctors and orthopedic specialists for his feet and leg conditions on four occasions, and attended fifteen sessions of physical therapy.  (Ng & McKenney 56.1 Stmt. ¶¶ 40-42.) Jones states that he was "continuously going back and forth to Bellevue." (Dkt. No. 49: Giovanatti Aff. Ex. A: Jones Dep. at 73.)

Additionally, Jones received new orthopedic shoes while in DOC custody. (Giovanatti Aff. Ex. C: Jones Med. Record at 000435.) On July 15, 2013, Jones requested that DOC medical provider Dr. Estrada evaluate him for orthopedic shoes "to improve his mobility." (Jones Medical Record at 000450; see also Ng & McKenney 56.1 Stmt. ¶ 36.)  Dr. Estrada performed x-rays, noted "painful bunion deformities" and referred Jones to Bellevue to be evaluated for orthopedic shoes.  (Jones Med. Record at 000450-451; see also Ng & McKenney 56.1 Stmt. ¶ 36.) Jones was evaluated at Bellevue's prosthetic clinic on July 24, 2013, and given a pair of orthopedic shoes.  (Jones Med. Record at 000435; see also Ng & McKenney 56.1 Stmt. ¶ 37.)  Jones was permitted to keep his new orthopedic shoes for the remainder of his time in DOC custody.  (Ng & McKenney 56.1 Stmt. ¶ 38.)

## ANALYSIS

### I.   SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); Humphreys v. Cablevision Sys. Corp., 533 F.

App'x 13, 14 (2d Cir. 2014); <u>Connolly</u> v. <u>Calvanese</u>, 515 F. App'x 62, 62 (2d Cir. 2013); <u>Lang</u> v. <u>Ret. Living Publ'g Co.</u>, 949 F.2d 576, 580 (2d Cir. 1991).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment.  <u>See</u>, <u>e.g.</u>, <u>Adickes</u> v. <u>S.H. Kress & Co.</u>, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); <u>Alzawahra</u> v. <u>Albany Med. Ctr.</u>, 546 F. App'x 53, 54 (2d Cir. 2013); <u>Chambers</u> v. <u>TRM Copy Ctrs. Corp.</u>, 43 F.3d 29, 36 (2d Cir. 1994); <u>Gallo</u> v. <u>Prudential Residential Servs., Ltd. P'ship</u>, 22 F.3d 1219, 1223 (2d Cir. 1994).  The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof.  <u>See</u>, <u>e.g.</u>, <u>Celotex Corp.</u> v. <u>Catrett</u>, 477 U.S. at 323, 106 S. Ct. at 2552-53; <u>Dolan</u> v. <u>Cassella</u>, 543 F. App'x 90, 90 (2d Cir. 2013).

To defeat a summary judgment motion, the non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts.'"  <u>Scott</u> v. <u>Harris</u>, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007) (quoting <u>Matsushita Elec. Indus. Co.</u> v. <u>Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986)).  Instead, the non-moving party must "cit[e] to particular parts of materials in the record" to show that "a fact . . . is genuinely disputed."  Fed. R. Civ. P. 56(c)(1); <u>see</u>, <u>e.g.</u>, <u>Matsushita Elec. Indus. Co.</u> v. <u>Zenith Radio Corp.</u>, 475 U.S. at 587, 106 S. Ct. at 1356; <u>Alzawahra</u> v. <u>Albany Med. Ctr.</u>, 2013 WL 6284286 at *1; <u>Weinstock</u> v. <u>Columbia Univ.</u>, 224 F.3d 33, 41 (2d Cir. 2000) (at summary judgment, "[t]he time has come . . . 'to put up or shut up'"), <u>cert. denied</u>, 540 U.S. 811, 124 S. Ct. 53 (2003).

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are

to be drawn in his favor." <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. at 255, 106 S. Ct. at 2513.[4/] The Court draws all inferences in favor of the non-moving party only after determining that such inferences are reasonable, considering all the evidence presented. <u>See</u>, <u>e.g.</u>, <u>Apex Oil Co.</u> v. <u>DiMauro</u>, 822 F.2d 246, 252 (2d Cir.), <u>cert. denied</u>, 484 U.S. 977, 108 S. Ct. 489 (1987). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." <u>Chambers</u> v. <u>TRM Copy Ctrs. Corp.</u>, 43 F.3d at 37.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact. <u>See</u>, <u>e.g.</u>, <u>Donahue</u> v. <u>Windsor Locks Bd. of Fire Comm'rs</u>, 834 F.2d 54, 58 (2d Cir. 1987); <u>Knight</u> v. <u>U.S. Fire Ins. Co.</u>, 804 F.2d 9, 11 (2d Cir. 1986), <u>cert. denied</u>, 480 U.S. 932, 107 S. Ct. 1570 (1987). To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant. <u>See</u>, <u>e.g.</u>, <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. at 248, 106 S. Ct. at 2510. While "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted." <u>Id.</u> at 248, 106 S. Ct. at 2510 (citations omitted); <u>see also</u>, <u>e.g.</u>, <u>Knight</u> v. <u>U.S. Fire Ins. Co.</u>, 804 F.2d at 11-12.

"The Court recognizes that it must extend extra consideration to pro se plaintiffs" and that "pro se parties are to be given special latitude on summary judgment motions." <u>Salahuddin</u> v. <u>Coughlin</u>, 999 F. Supp. 526, 535 (S.D.N.Y. 1998) (Peck, M.J.) (citations & internal quotations

---

[4/]    <u>See also</u>, <u>e.g.</u>, <u>Crown Castle NG E. Inc.</u> v. <u>Town of Greenburgh, N.Y.</u>, 552 F. App'x 47, 49 (2d Cir. 2014); <u>Alzawahra</u> v. <u>Albany Med. Ctr.</u>, 2013 WL 6284286 at *1; <u>Feingold</u> v. <u>New York</u>, 366 F.3d 138, 148 (2d Cir. 2004); <u>Chambers</u> v. <u>TRM Copy Ctrs. Corp.</u>, 43 F.3d at 36; <u>Gallo</u> v. <u>Prudential Residential Servs., Ltd. P'ship</u>, 22 F.3d at 1223.

omitted); see, e.g., McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (a pro se party's pleadings should be read liberally and interpreted "'to raise the strongest arguments that they suggest'").[5/]  "Nevertheless, proceeding pro se does not otherwise relieve a litigant from the usual requirements of summary judgment, and a pro se party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." Cole v. Artuz, 93 Civ. 5981, 1999 WL 983876 at *3 (S.D.N.Y. Oct. 28, 1999) (citing cases).[6/]

## II. DEFENDANTS ARE GRANTED SUMMARY JUDGMENT ON JONES' § 1983 DELIBERATE INDIFFERENCE CLAIM

Jones claims that Officers Ng and McKenney "deprived [him] of a medically prescribed amply documented medical[ly] needed rehabilitation device 'Supportive Footwear'" in violation of his "constitutional right to receive adequate medical care and treatment." (Dkt. No. 29: Am. Compl. ¶¶ 95, 110.)  Defendants argue that summary judgment should be granted because

---

[5/]   See also, e.g., Ferran v. Town of Nassau, 471 F.3d 363, 369 (2d Cir. 2006); Fuller v. Armstrong, 204 F. App'x 987, 988 (2d Cir. 2006), cert. denied, 552 U.S. 906, 128 S. Ct. 209 (2007); Gildor v. U.S. Postal Serv., 179 F. App'x 756, 758 (2d Cir. 2006); Porter v. Coughlin, 421 F.3d 141, 144 n.2 (2d Cir. 2005); Hemphill v. New York, 380 F.3d 680, 687 (2d Cir. 2004); Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003); Johnson v. Buffalo Police Dep't, 46 F. App'x 11, 12 (2d Cir. 2002), cert. denied, 539 U.S. 959, 123 S. Ct. 2645 (2003).

[6/]   See also, e.g., United States v. Acomb, No. 99-6308, 216 F.3d 1073 (table), 2000 WL 899482 at *1 (2d Cir. June 29, 2000); James v. Phillips, 05 Civ. 1539, 2008 WL 1700125 at *3 (S.D.N.Y. Apr. 9, 2008); Thompson v. Tracy, 00 Civ. 8360, 2008 WL 190449 at *5 (S.D.N.Y. Jan. 17, 2008); Bunting v. Nagy, 452 F. Supp. 2d 447, 454 (S.D.N.Y. 2006); Rodriguez v. McClenning, 399 F. Supp. 2d 228, 234 & n.52 (S.D.N.Y. 2005); Pack v. Artuz, 348 F. Supp. 2d 63, 78 (S.D.N.Y. 2004); Rector v. Sylvania, 285 F. Supp. 2d 349, 353 (S.D.N.Y. 2003); Walker v. Vaughan, 216 F. Supp. 2d 290, 296-97 (S.D.N.Y. 2002); Hussein v. The Waldorf-Astoria, 134 F. Supp. 2d 591, 596 (S.D.N.Y. 2001), aff'd, 31 F. App'x 740 (2d Cir. 2002).

Jones did not objectively suffer from a sufficiently serious medical need, and they were not deliberately indifferent to such a need.  (Dkt. No. 45: Ng & McKenney Br. at 6-13.)

## A.    Legal Standards Governing § 1983 Deliberate Indifference to Medical Needs Claims

To prevail in a § 1983 action, a plaintiff must demonstrate that he has been denied a constitutional or federal statutory right and that the deprivation occurred under color of state law. See 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988).  "Section 1983 itself," however, "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."   Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted), cert. denied, 512 U.S. 1240, 114 S. Ct. 2749 (1994).

It is not clear from the Second Amended Complaint whether Jones was a convicted prisoner or a pretrial detainee at the time of the alleged deliberate indifference, but "'the standard for review for a Fourteenth Amendment Due Process claim by a pretrial detainee is identical to an Eighth Amendment claim by a convicted prisoner.'"  Stevens v. City of N.Y., 12 Civ. 3808, 2013 WL 81327 at *3 (S.D.N.Y. Jan 8, 2013) (quoting Martin v. City of N.Y., 11 Civ. 600, 2012 WL 1392648 at *8 (S.D.N.Y. April 20, 2012) (citing Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009))), aff'd, 541 F. App'x 111 (2d Cir. 2013).

In order to prevail, Jones must show that defendants were deliberately indifferent to Jones' serious medical needs.  See, e.g., Buffaloe v. Fein, 12 Civ. 9469, 2013 WL 3471060 at *1 (S.D.N.Y. July 11, 2013) (Peck, M.J.) (& cases cited therein).

As the Second Circuit has explained, "the deliberate indifference standard embodies both an objective and a subjective prong." Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).[7] "Objectively, the alleged deprivation must be 'sufficiently serious' . . . ." Hathaway v. Coughlin, 99 F.3d at 553; Smith v. Carpenter, 316 F.3d at 183-84 ("The objective 'medical need' element measures the severity of the alleged deprivation . . . .").[8] "'The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves . . . .'" Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986). "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324 (1991) (citation omitted); see also, e.g., Dean v. Coughlin, 804 F.2d at 215 ("'[T]he essential test is one of medical necessity and not one simply of desirability.'"). Thus, the constitutional protection is limited to "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" Chance v. Armstrong, 143 F.3d at 702;[9] accord, e.g., Fransua v. Vadlamudi, 2008 WL 4810066 at *1; Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000) ("A serious medical condition exists where 'the failure to treat a

---

[7] Accord, e.g., Fransua v. Vadlamudi, No. 05-1715, 2008 WL 4810066 at *1 (2d Cir. Nov. 3, 2008); Salahuddin v. Goord, 467 F.3d 263, 279-81 (2d Cir. 2006); Smith v. Carpenter, 316 F.3d 178, 183-84 (2d Cir. 2003); Selby v. Coombe, 17 F. App'x 36, 37 (2d Cir. 2001); Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).

[8] See also, e.g., Fransua v. Vadlamudi, 2008 WL 4810066 at *1; Salahuddin v. Goord, 467 F.3d at 279-81; Selby v. Coombe, 17 F. App'x at 37; Chance v. Armstrong, 143 F.3d at 702.

[9] The Second Circuit in Chance v. Armstrong identified several factors that are relevant in determining whether a serious medical condition exists, including "'[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" 143 F.3d at 702.

prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain."').

The Second Circuit has stated that determining whether a deprivation is objectively serious entails two inquiries:

> Determining whether a deprivation is an objectively serious deprivation entails two inquiries.  The first inquiry is whether the prisoner was actually deprived of adequate medical care.  As the Supreme Court has noted, the prison official's duty is only to provide reasonable care.  Thus, "prison officials who act reasonably [in response to an inmate-health risk] cannot be found liable . . ." and, conversely, failing "to take reasonable measures" in response to a medical condition can lead to liability.
>
> Second, the objective test asks whether the inadequacy in medical care is sufficiently serious.  This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner.  For example, if the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious.  Factors relevant to the seriousness of a medical condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain."  In cases where the inadequacy is in the medical treatment given, the seriousness inquiry is narrower.  For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry "focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone."  Thus, although we sometimes speak of a "serious medical condition" as the basis for [such a] claim, such a condition is only one factor in determining whether a deprivation of adequate medical care is sufficiently grave to establish constitutional liability.

Salahuddin v. Goord, 467 F.3d at 279-80 (citations omitted, emphasis added).

Where the plaintiff alleges delay or interruption in treatment rather than failure to receive treatment, "the serious medical need inquiry can properly take into account the severity of the temporary deprivation alleged by the prisoner."  Smith v. Carpenter, 316 F.3d at 186.  "[I]t's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant

for [these] purposes."  Id. (citing Chance v. Armstrong, 143 F.3d at 702-03).  "The absence of adverse medical effects or demonstrable physical injury is one . . . factor that may be used to gauge the severity of the medical need at issue.  Indeed, in most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm."  Id. at 187 (citations omitted).

"Subjectively, the charged official must act with a sufficiently culpable state of mind." Hathaway v. Coughlin, 99 F.3d at 553.[10/]  "The required state of mind, equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998) (quotations omitted, quoting Hathaway v. Coughlin, 99 F.3d at 553 (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979 (1994))); see, e.g., Caiozzo v. Koreman, 581 F.3d 63, 71 (2d Cir. 2009) (to establish a violation of his Fourteenth Amendment due process rights, a plaintiff "must prove, inter alia, that the government-employed defendant disregarded a risk of harm to the plaintiff of which the defendant was aware").[11/]

---

[10/]    Accord, e.g., Fransua v. Vadlamudi, 2008 WL 4810066 at *1; Salahuddin v. Goord, 467 F.3d at 280-81; Smith v. Carpenter, 316 F.3d at 184 ("[T]he subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind."); Selby v. Coombe, 17 F. App'x at 37; Chance v. Armstrong, 143 F.3d at 702.

[11/]    See also, e.g., Sinkov v. Americor, Inc., 419 F. App'x 86, 89 (2d Cir. 2011) ("evidence 'that [a defendant] should have been aware that [the detainee] was in immediate danger' was insufficient"); Mayo v. Cnty. of Albany, 357 F. App'x 339, 341 (2d Cir. 2009) ("A plaintiff bringing a deliberate indifference claim must therefore demonstrate that the defendant deliberately disregarded knowledge of the harm he knew he could cause as a result of his

(continued...)

Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison [officials or] guards in intentionally denying or delaying access to medical care." Estelle v. Gamble, 429 U.S. 97, 104-05, 97 S. Ct. 285, 291 (1976) (fn. omitted). However, an "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." Id. at 105-06, 97 S. Ct. at 292; accord, e.g., Burton v. N.Y.S. Dep't of Corr., 93 Civ. 6028, 1994 WL 97164 at *2 (S.D.N.Y. Mar. 21, 1994) (Sotomayor, D.J.). "Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . ." Estelle v. Gamble, 429 U.S. at 106, 97 S. Ct. at 292.[12/] As the Supreme Court has stated, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. at 106, 97 S. Ct. at 292.[13/]

**B.    Application to Jones' Claims**

Jones' allegations are not sufficient to establish an Eighth (or Fourteenth) Amendment violation.  Jones claims that during a prior DOC custody on November 8, 2010, he was seen by a

---

[11/]    (...continued)
actions."); Ross v. Westchester Cnty. Jail, 10 Civ. 3937, 2012 WL 86467 at *5 (S.D.N.Y. Jan. 11, 2012) ("Deliberate indifference is a mental state akin to 'recklessness,' and is measured using a 'subjective test' that discerns whether the defendant was 'actually aware of an excessive risk to an inmate's health or safety,' and therefore 'act[ed] with a sufficiently culpable state of mind.'" (citation omitted)); Mercado v. City of N.Y., 08 Civ. 2855, 2011 WL 6057839 at *4 (S.D.N.Y. Dec. 5, 2011).

[12/]    Accord, e.g., Salahuddin v. Goord, 467 F.3d at 280; Hathaway v. Coughlin, 99 F.3d at 553; Felipe v. N.Y.S. Dep't of Corr. Servs., No. 95-CV-1735, 1998 WL 178803 at *3 (N.D.N.Y. Apr. 10, 1998) (Pooler, D.J.).

[13/]    Accord, e.g., Smith v. Carpenter, 316 F.3d at 184 ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation."); Hathaway v. Coughlin, 99 F.3d at 553; Burton v. N.Y.S. Dep't of Corr., 1994 WL 97164 at *2.

mental health clinician who evaluated him for "use of orthopedic boots with soles." (Dkt. No. 29: Am. Compl. ¶ 30.) In addition, the medical unit at Walsh Correctional Facility prescribed "boots with specially designed impact shock resistant insole, to prevent and reduce future fractures and assist in daily walking." (Am. Compl. ¶ 40.) Further, on April 10, 2012, DOC medical provider Dr. Goldberg recommended that due to his "flatfoot" Jones should "obtain and wear supportive footwear as per institutional guidelines." (Am. Compl. ¶ 64; Dkt. No. 49: Giovanatti Aff. Ex. B: Jones Med. Record at 001028.)

Jones alleges that despite these documented recommendations, upon entering the MDC on January 28, 2012 and May 15, 2013, he was denied "access to his specially designed orthopedic supportive footwear without consultation with medical staff." (Am. Compl. ¶¶ 42, 55.) As a result, Jones "suffered swelling of his left foot bunion with an abscess that has fluid and is painful" as well as "[d]aily walking impact trauma inflicted on [his] right knee, broken orthopedic hardware, left hip/femur, mid shift residual cavity." (Am. Compl. ¶¶ 47-48.)

### 1.    The Eighth Amendment's Objective Requirement

To satisfy the first prong of the deliberate indifference standard, Jones must show that the alleged deprivation was objectively sufficiently serious. Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006). "[C]ourts in this Circuit have consistently found that pain and other problems resulting from being forced to wear institutional footwear are not sufficiently serious to satisfy [the objective] prong" of the deliberate indifference standard. Stevens v. City of N.Y., 12 Civ. 3808, 2013 WL 81327 at *3 (S.D.N.Y. Jan. 8, 2013), aff'd, 541 F. App'x 111 (2d Cir. 2013); see also, e.g., Anderson v. City of N.Y. Dep't of Corr., 11 Civ. 4069, 2013 WL 702918 at *4 (S.D.N.Y. Feb. 26, 2013) ("Although [plaintiff] may have been in discomfort for a period of time from wearing shoes that he claims provided no support for the foot or ankle, this does not constitute a condition of

confinement that offends contemporary standards of decency or poses an excessive risk to a prisoner's health or safety."); <u>Taylor</u> v. <u>Dep't of Corr.</u>, 11 Civ. 6892, 2012 WL 3024743 at *4 (S.D.N.Y. July 24, 2012) ("Courts have repeatedly held that allegations of inadequate footwear resulting in foot pain are not sufficiently serious to satisfy the objective component of a deliberate indifference claim[]." (collecting cases)), <u>report & rec. adopted sub nom.</u> <u>Taylor</u> v. <u>Schriro</u>, 11 Civ. 6892, 2012 WL 3306477 (S.D.N.Y. Aug. 13, 2012); <u>Williams</u> v. <u>Dep't of Corr.</u>, 11 Civ. 1515, 2011 WL 3962596 at *4 (S.D.N.Y. Sept 7, 2011) (institutional footwear that caused "extreme" leg and foot pain not a constitutional violation); <u>Brown</u> v. <u>DeFrank</u>, 06 Civ. 2235, 2006 WL 3313821 at *21 (S.D.N.Y. Nov. 15, 2006) (Peck, M.J.) ("the case law holds that prisoner complaints about bunions or other foot problems do not establish the objective prong of the deliberate indifference standard").[14/]   Accordingly, Jones has failed to establish that the deprivation of his orthopedic footwear was sufficiently serious to satisfy the first prong of a deliberate indifference claim.

---

[14/]   Jones' opposition brief focuses on Officers Ng and McKenney's failure to follow the procedures in DOC Operations Order "Inmate Footwear," effective as of Jan. 7, 2011. (Dkt. No. 55: Jones Br. ¶¶ 5-14; <u>see also</u> Jones Br. Ex.: Operations Order re Inmate Footwear at 3.)  While Jones seems to be correct that having notified each officer of his foot condition, he should have been allowed to retain his orthopedic footwear for the purpose of having the medical staff examine it (Jones Br. Ex.: Operations Order), failure to follow departmental policy "does not necessarily violate an individual's constitutional rights." <u>Drew</u> v. <u>Connolly</u>, 536 F. App'x 164, 166 (2d Cir. 2013) ("Although the seizure of [plaintiff's] license violated state law and the written Departmental policy, an action that violates state law does not necessarily violate an individual's constitutional rights."); <u>see also</u>, <u>e.g.</u>, <u>Singer</u> v. <u>Fulton Cnty. Sheriff</u>, 63 F.3d 110, 119 (2d Cir. 1995) (a § 1983 claim "will stand only insofar as the plaintiff can prove the sine qua non of a § 1983 action: the violation of a federal right." (quoting <u>Adickes</u> v. <u>S.H. Kress & Co.</u>, 398 U.S. 144, 150, 90 S. Ct. 1598, 1604 (1970) (necessary element of a § 1983 action is "that the defendant has deprived [the plaintiff] of a right secured by the 'Constitution and laws' of the United States")), <u>cert. denied</u>, 517 U.S. 1189, 116 S. Ct. 1676 (1996); <u>Bowen</u> v. <u>Cnty. of Westchester</u>, 706 F. Supp. 2d 475, 489 (S.D.N.Y. 2010) ("As a general matter, a breach of departmental policy does not by itself constitute a constitutional violation." (citing <u>Virginia</u> v. <u>Moore</u>, 553 U.S. 164, 128 S. Ct. 1598, 1605 (2008))).

### 2.     The Eighth Amendment's Subjective Requirement

Because Jones has not satisfied the objective prong for deliberate indifference, there is no need to discuss whether his claims satisfy the subjective requirement.  E.g., Goris v. Breslin, 402 F. App'x 582, 584 (2d Cir. 2010).  In any event, Jones has not alleged facts demonstrating that defendants acted with a state of mind "equivalent to criminal recklessness" in which they knew of and disregarded an "excessive risk" to his health or safety.  Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998) (quoting Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996) (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979 (1994))).

Jones alleges that upon intake on January 27, 2012, he told Officer Ng he had a "medical condition" requiring the use of his shoes.  (Dkt. No. 49: Giovanatti Aff. Ex. A: Jones Dep. at 18.)  Similarly, upon intake on May 15, 2013, Jones informed Officer McKenney that he had "a medical exemption . . . documented" to allow him to keep his orthopedic shoes.  (Jones Dep. at 66-67.)  Defendants assert that while at the intake desk they had no access to Jones' medical records.  (See pages 2-3 above.)  Jones offers no evidence that defendants had his medical records or some other means by which they could confirm his medical requirements.  Thus, apart from Jones' own statements, Ng and McKenney had no knowledge of Jones' medical needs or mechanism by which to verify his statements.  To satisfy the subjective prong of the deliberate indifference standard, the official must be aware of facts from which an inference could be drawn that a "substantial risk of serious harm exists."  Hemmings v. Gorczyk, 134 F.3d at 108.  Because Officers Ng and McKenney had no such knowledge, they could not have acted with the required state of mind when they confiscated Jones' orthopedic shoes.  See, e.g., Perkins v. Schriro, 11 Civ. 814, 2012 WL 5909892 at *2 (S.D.N.Y. Nov. 21, 2012) (corrections officer did not act in a sufficiently culpable manner when he confiscated plaintiff's footwear without specific knowledge of the gravity of plaintiff's

condition); <u>Curry</u> v. <u>Tousignant</u>, No. 04-CV-649F, 2007 WL 2859718 at *3 (W.D.N.Y. Sept. 26, 2007) (no evidence to support that corrections officers were reckless in confiscating plaintiff's orthopedic boots at intake when they were not authorized to allow him to keep them);  <u>Ruocco</u> v. <u>Tung</u>, No. 02CV1443, 2004 WL 721716 at *9 (D. Conn. Mar. 30, 2004) ("the mere fact that defendant [corrections officer] followed institutional rules" in confiscating plaintiff's orthopedic shoes at intake "instead of accepting [plaintiff's] plea to circumvent the process, is insufficient to demonstrate deliberate indifference by defendant [corrections officer] to a serious medical need").

Moreover, the record establishes that Officer Ng allowed Jones to keep his crutches and Officer McKenney allowed him to keep his cane.  (<u>See</u> pages 2-3 above.)  Jones does not allege that he displayed symptoms upon either admittance to the MDC that would demonstrate to a lay person that his orthopedic shoes in particular were essential to prevent him from coming to serious harm.  Jones' failure to return to the property desk after his intake medical exam with authorization to retrieve his shoes (<u>see</u> pages 2-3 above) reinforces this finding.  If the MDC's medical staff did not determine that Jones' orthopedic shoes were necessary to prevent him from coming to serious harm, it would not be reasonable to find defendants, lay corrections officers, deliberately indifferent for determining the same.  <u>See</u>, <u>e.g.</u>, <u>Johnson</u> v. <u>City of N.Y.</u>, 12 Civ. 8265, 2014 WL 5393181 at *9 (S.D.N.Y. Oct. 21, 2014), <u>report & rec. adopted</u>,12 Civ. 8265, 2014 WL 6455162 (S.D.N.Y. Nov. 17, 2014).  That Jones would have preferred to keep his orthopedic shoes in addition to his crutches or cane does not amount to a constitutional violation.  <u>See</u>, <u>e.g.</u>, <u>Walker</u> v. <u>Fischer</u>, 523 F. App'x 43, 44 (2d Cir. 2013) (citing <u>Chance</u> v. <u>Armstrong</u>, 143 F.3d 698, 703 (2d Cir. 1998) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.")), <u>cert. denied</u>, 134 S. Ct. 1028 (2014).

Based on Jones' failure to provide evidence of a sufficiently serious medical need, or the defendants' deliberate indifference to such a need, defendants' summary judgment motion as to Jones' § 1983 Eighth Amendment deliberate indifference claim is <u>GRANTED</u>.

## III.   DEFENDANTS ARE GRANTED SUMMARY JUDGMENT ON JONES' CLAIMS UNDER THE ADA AND REHABILITATION ACT

Jones  alleges that in confiscating his orthopedic shoes, defendants discriminated against his "receipt of a federal[ly] funded service" in violation of the ADA, and § 504 of the Rehabilitation Act.  (Dkt. No. 29: Am. Compl. ¶¶ 4-5, 76, 96-100, 123-26.)

### A.   The ADA and Rehabilitation Act Standards

To prove a violation of Title II of the ADA,[15] a plaintiff must demonstrate:  "(1) that he is a 'qualified individual' with a disability; (2) that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability."  <u>Hargrave</u> v. <u>Vermont</u>, 340 F.3d 27, 34-35 (2d Cir. 2003).[16]  Since "[t]hese requirements apply with equal force to plaintiffs' Rehabilitation Act claims," the Court will analyze the claims in tandem.[17]  <u>Hargrave</u> v. <u>Vermont</u>,

---

[15]   Title II of the ADA provides: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

[16]   <u>Accord</u>, <u>e.g.</u>, <u>Rosado</u> v. <u>Herard</u>, 12 Civ. 8943, 2014 WL 1303513 at *4 (S.D.N.Y. Mar. 25, 2014); <u>K.M.</u> v. <u>Hyde Park Cent. Sch. Dist.</u>, 381 F. Supp. 2d 343, 357-58 (S.D.N.Y. 2005); <u>Blatch</u> v. <u>Hernandez</u>, 360 F. Supp. 2d 595, 629 (S.D.N.Y. 2005); <u>Doe</u> v. <u>Goord</u>, 04 Civ. 0570, 2004 WL 2829876 at *15 (S.D.N.Y. Dec. 10, 2004) (Peck, M.J.).

[17]   Section 504 of the Rehabilitation Act provides in pertinent part:  "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a).

340 F.3d at 35; see, e.g., Hilton v. Wright, 673 F.3d 120, 128 n.7 (2d Cir. 2012) ("When brought together, claims under these two statutes may be treated identically."); Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 85 (2d Cir. 2004) ("Since the standards adopted by Titles II and III of the ADA are, in most cases, the same as those required under the Rehabilitation Act, . . . we consider the merits of these claims together.").[18]

> Pursuant to the ADA, a "qualified individual with a disability" means
>
> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, . . . or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2).

### B.   Jones Does Not Establish a Violation of the ADA or Rehabilitation Act

Even if Jones were a "qualified individual" with a disability because of a substantial limitation on his ability to walk due to his foot impairment,[19] he makes no allegation to support the second and third prongs of an ADA claim: that defendants excluded him from participation in a

---

[18]   See also, e.g., Henrietta D. v. Bloomberg, 331 F.3d 261, 273 (2d Cir. 2003) ("[U]nless one of those subtle distinctions [between the Rehabilitation Act and the ADA] is pertinent to a particular case, we treat claims under the two statutes identically."), cert. denied, 541 U.S. 936, 124 S. Ct. 1658 (2004); Rosado v. Herard, 2014 WL 1303513 at *4; Brown v. DeFrank, 06 Civ. 2235, 2006 WL 3313821 at *28 (S.D.N.Y. Nov. 15, 2006) (Peck, M.J.); K.M. v. Hyde Park Cent. Sch. Dist., 381 F. Supp. 2d at 357; Blatch v. Hernandez, 360 F. Supp. 2d at 630; Doe v. Goord, 2004 WL 2829876 at *18.

[19]   In this Circuit, "[c]ourts have placed the bar relatively high when determining when the activity of walking has been substantially limited." Potenza v. City of N.Y. Dep't of Transp., 00 Civ. 0707, 2001 WL 1267172 at *10 (S.D.N.Y. Oct. 23, 2001) (collecting cases), aff'd sub nom. Potenza v. City of N.Y., 365 F.3d 165 (2d Cir. 2004), and aff'd in part sub nom. Potenza v. City of N.Y., 95 F. App'x 390 (2d Cir. 2004); see also, e.g., De La Rosa v. City of N.Y. Police Dep't, 09 Civ. 5290, 2010 WL 4177626 at *8 & n.153 (S.D.N.Y. Oct. 22, 2010), aff'd, 461 F. App'x 73 (2d Cir.), cert. denied, 133 S. Ct. 353 (2012); Schroeder v. Suffolk Cnty. Cmty. Coll., No. 07-CV-2060, 2009 WL 1748869 at *9 & n.7 (E.D.N.Y. June 22, 2009) (collecting cases).

public entity's services, programs or activities by reason of his disability.  (See cases cited at page 17 above.)  Jones does not allege facts to support his ADA claim beyond those alleged in support of his deliberate indifference claim.  Challenges to the treatment of the underlying medical condition are not sufficient to support a claim under the ADA or the Rehabilitation Act. See, e.g., Rosado v. Herard, 12 Civ. 8943, 2014 WL 1303513 at *5 (S.D.N.Y. Mar. 25, 2014) ("The Second Circuit has noted that the ADA and Rehabilitation Act are addressed to rules . . . that hurt [people with disabilities] by reason of their handicap. . . . [C]ourts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability."  (citations & quotations omitted)); Hardy v. Diaz, No. 08-CV-1352, 2010 WL 1633379 at *9 (N.D.N.Y. Mar. 30, 2010), report & rec. adopted, No. 08-CV-1352, 2010 WL 1633390 (N.D.N.Y. Apr. 21, 2010).

Accordingly, Jones has not established a violation of the ADA or Rehabilitation Act.[20]  Defendants' summary judgment motion as to Jones' ADA and Rehabilitation Act claims thus is GRANTED.

---

[20]    Because the Court finds that Jones has failed to allege a violation of the ADA or the Rehabilitation Act, it is not necessary to address defendants' argument that "the ADA and Section 504 [of the Rehabilitation Act] do not permit claims for money damages against natural persons in either their individual or their official capacities." (Dkt. No. 45: Ng & McKenney Br. at 13-14.)  It is clear that damages claims against state officials in their individual capacities are not actionable. See, e.g., Darcy v. Lippman, 356 F. App'x 434, 437 (2d Cir. 2009); Garcia v. S.U.N.Y. Health Sciences Ctr., 280 F.3d 98, 107 (2d Cir. 2001). Whether individuals can be sued for damages under the ADA or Rehabilitation Act in their official capacities, however, is unsettled in this District.  See, e.g., Barnes v. Abdullah, 11 Civ. 8168, 2013 WL 3816586 at *7 n.7 (S.D.N.Y. July 22, 2013); Cole v. Goord, 05 Civ. 2902, 2009 WL 2601369 at *4-5 (S.D.N.Y. Aug. 25, 2009) (Lynch, D.J.) (collecting cases).

## IV.   DEFENDANTS ARE GRANTED SUMMARY JUDGMENT ON JONES' REMAINING § 1983 CLAIMS

### A.   Jones' First Amendment Claim

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. Jones' First Amendment claim is based on "the right to grieve and to petition without being restricted." (Dkt. No. 49: Giovanatti Aff. Ex. A: Jones Dep. at 110-11.) Jones does not allege that he was restricted from grieving while at the MDC, only that he "filed a grievance, and they didn't respond until months later." (Jones Dep. at 111; see also Dkt. No. 29: Am. Compl. ¶¶ 82-83.)

As an initial matter, "to state a claim for damages under Section 1983, the plaintiff must allege sufficient facts to demonstrate that defendants were personally or directly involved in the violation." Harris v. Westchester Cnty. Dep't of Corr., 06 Civ. 2011, 2008 WL 953616 at *9 (S.D.N.Y. Apr. 3, 2008) (citing Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001)). [21/] Jones has not alleged that Officers Ng or McKenney had any personal involvement with respect to responding (or failing to respond) to his grievances.

Moreover, "'inmate grievance programs created by state law are not required by the Constitution, and consequently allegations that prison officials violated those procedures [do] not give rise to a cognizable [Section] 1983 claim.'" Alvarado v. Westchester Cnty., 22 F. Supp. 3d at

---

[21/]   See also Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010); Williams v. Savory, 13 Civ. 2013, 2015 WL 109816 at *15 (S.D.N.Y. Jan. 7, 2015); Harris v. Fischer, 11 Civ. 6260, 2014 WL 3859242 at *2 (S.D.N.Y. Aug. 1, 2014) ("A complaint based on a violation under § 1983 that does not allege the personal involvement of a defendant fails as a matter of law." (citation omitted)); Alvarado v. Westchester Cnty., 22 F. Supp. 3d 208, 214 (S.D.N.Y. 2014).

214; see also, e.g., Hernandez v. Goord, 01 Civ. 9585, 2013 WL 2355448 at *9 (S.D.N.Y. May 29, 2013) (Plaintiff "has a First Amendment right to access the courts, but the constitution does not similarly protect his right to access a prison grievance system."); Harris v. Westchester Cnty. Dep't of Corr., 2008 WL 953616 at *5 ("plaintiffs claim regarding defendants' allegedly negligent mishandling of grievances cannot, as a matter of law, support a claim under Section 1983.")  Thus, to the extent Jones' First Amendment claim is that the MDC did not timely respond to his prison grievance, he fails to state a § 1983 claim as a matter of law.

Because Jones has not established a violation of his First Amendment rights, defendants' summary judgment motion is GRANTED as to this claim.

**B.     Jones' Fourth Amendment Claim**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  Jones' Fourth Amendment claim alleges a "breach of legally required obligation and duty [owed] to [him] to be secured in his person, papers, and effects against illegal search and seizure as it relates to the wrongful confiscation of his orthopedic prescribed supportive footwear." (Dkt. No. 29: Am. Compl. ¶ 119.)  Jones seems to support his claim that his shoes were unreasonably seized by alleging that on April 23, 2013, he was "administratively released from Department of Corrections 'DOC' custody still in want of his orthopedic boots."  (Am. Compl. ¶ 49.) Jones' claims, however, are limited to Officers Ng and McKenney's confiscation of his orthopedic shoes on January 28, 2012 and May 15, 2013, respectively.  (Dkt. No. 49: Giovanatti Aff. Ex. A: Jones Dep. at 111.)

Courts in this Circuit recognize that "the maintenance of prison security and the preservation of institutional order and discipline are 'essential goals that may require limitation or

retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees.'" United States v. Willoughby, 860 F.2d 15, 21 (2d Cir. 1988) (quoting Bell v. Wolfish, 441 U.S. 520, 546, 99 S. Ct. 1861, 1878 (1979) (fn. omitted)), cert. denied, 488 U.S. 1033, 109 S. Ct. 846 (1989). "Consequently, a limitation on a pretrial detainee's Fourth Amendment rights is justified so long as it 'rests on the twin-rationale of objective administrators insuring prison security.'" Ortiz v. City of N.Y., 12 Civ. 3118, 2012 WL 6200397 at *6 (S.D.N.Y. Dec. 12, 2012) (quoting United States v. Cohen, 796 F.2d 20, 23-24 (2d Cir.), cert. denied, 479 U.S. 854, 107 S. Ct. 189 (1986)).  Officers Ng and McKenney assert that they confiscated Jones' orthopedic shoes for "security and safety reasons."  (Dkt. No. 46: Ng & McKenney 56.1 Stmt. ¶¶ 2, 19, 33.)  Jones puts forth no evidence to suggest that defendants confiscated his shoes for any purpose other than the "maintenance of prison security and the preservation of institutional order."  United States v. Willoughby, 860 F.2d at 21. To the extent Jones alleges that his orthopedic shoes were not returned to him when he was released from DOC custody he has not provided any evidence of Officer Ng or McKenney's involvement in the failure to return his shoes.

Defendants' summary judgment motion thus is GRANTED as to Jones' Fourth Amendment claim.

C.    **Jones' Thirteenth Amendment Claim**

Jones makes a passing reference in his amended complaint to a violation of the Thirteenth Amendment (Dkt. No. 29: Am. Compl. ¶ 3), but he does not allege any facts to support this claim.  At his deposition, Jones clarified that the claim pertains to "[b]eing incarcerated and having to live in prison."  (Dkt. No. 49: Giovanatti Aff. Ex. A: Jones Dep. at 112.)  As his claim under the Thirteenth Amendment relates to defendants, Jones alleges that "[t]he decision to have [his] shoes, or to not have [his] shoes, was not [his] own."  (Jones Dep. at 112.)  Because there is

no direct private right of action available under the Thirteenth Amendment, Alma Soc'y Inc. v. Mellon, 601 F.2d 1225, 1237 (2d Cir.), cert. denied, 444 U.S. 995, 100 S.Ct. 531 (1979); Marshall v. Nat'l Assoc. of Letter Carriers, 03 Civ. 1361, 2003 WL 22519869 at *5 (S.D.N.Y. Nov. 7, 2003) (Peck, M.J.), report & rec. adopted, 03 Civ. 1361, 2004 WL 2202574 (S.D.N.Y. Sept. 30, 2004), defendants' summary judgment motion is GRANTED as to this claim.[22]


## CONCLUSION

For the reasons set forth above, defendants' summary judgment motion (Dkt. No. 44) is GRANTED as to all claims.[23]

SO ORDERED.

Dated:      New York, New York
            March 5, 2015

_____
**Andrew J. Peck**
United States Magistrate Judge

Copies to:     Robert Jones (Mail)
               All Counsel (ECF)

---

[22]     In his amended complaint, Jones also references violations of rights secured to him under the New York Constitution (Dkt. No. 29: Am. Compl. ¶ 3), but he does not anywhere elaborate on these claims.  Because they substantially mirror his federal claims, the analysis is the same.  See, e.g., Khan v. Ryan, 145 F. Supp. 2d 280, 287 (E.D.N.Y. 2001).

[23]     If Jones requires copies of any of the cases reported only in Westlaw, he should request copies from opposing counsel.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009); SDNY-EDNY Local Civil Rule 7.2.